UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| NEAL V. GOYAL, CALDERA ADVISORS, LLC, and BLUE HORIZON ASSET MANAGEMENT, LLC | ) ) ) ) | Civil Action No. |
| Defendants, | ) ) | Jury Trial Demanded |
| and | ) ) | |
| CALDERA INVESTMENT GROUP, INC. | ) ) | |
| Relief Defendant. | ) | |

## COMPLAINT

Plaintiff, the U.S. Securities and Exchange Commission ("SEC"), alleges as follows:

1. This case arises from a long-running fraud perpetrated by investment adviser Neal V. Goyal. Since 2006, Goyal has raised more than $11.4 million from at least 35 persons who believed they were investing in one of four investment funds under Goyal's control. While he represented that the funds invested in equities and significantly outperformed the market, Goyal never invested the vast majority of the money he raised from investors, and the limited trading that Goyal did perform was unsuccessful and resulted in significant losses. Goyal disguised his fraud by sending investors fictitious account statements grossly overstating his performance and, in Ponzi-scheme fashion, by using later investors' money to meet the distribution requests of prior investors. All the while, Goyal was stealing his investors' money to fund his own lavish

1

lifestyle, to pay business expenses, and to support a variety of personal business ventures including a bar and two children's clothing boutiques that his wife operates in Chicago.

2. Goyal continued to solicit and accept investments into May 2014.

3. By engaging in this conduct, Goyal and his codefendants – two investment advisers under Goyal's control – violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8(a) thereunder [17 C.F.R. § 275.206(4)-8(a)].

4. The SEC brings this lawsuit to hold Goyal accountable for his flagrant violations of the federal securities laws and to prevent further harm to investors. The SEC seeks permanent injunctions against Goyal and his codefendants to enjoin them from future violations of the above-cited provisions of the federal securities laws. The SEC further seeks an order requiring Goyal and his codefendants to pay disgorgement, plus prejudgment interest, of all ill-gotten gains they received. The SEC also seeks the imposition of civil penalties against Goyal and his codefendants pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)], and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)]. The SEC further requests that the relief defendant in this matter be required to disgorge the substantial ill-gotten gains that it received at the expense of Goyal's defrauded investors.

**JURISDICTION AND VENUE**

5. The Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. §77v(a)], Sections 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(e) and 78aa], and Sections 209(d) and 214 of the Advisers Act [15 U.S.C. §§ 80b-9(d) and 80b-14].

6. Venue is proper in this Court pursuant to Section 22(a) of the Securities Act, Section 27 of the Exchange Act, and Section 214 of the Advisers Act.

**THE DEFENDANTS AND RELIEF DEFENDANT**

7. Defendant Neal V. Goyal is 33 years old and resides in Chicago. Goyal owns, manages and controls two investment advisers: Defendants Blue Horizon Asset Management, LLC and Caldera Advisors, LLC. Goyal also owns and controls Relief Defendant Caldera Investment Group, Inc.

8. Defendant Blue Horizon Asset Management, LLC ("Blue Horizon") is an unregistered investment adviser established by Goyal as an Illinois limited liability company in January 2009. Blue Horizon is based in Chicago and acts as the investment adviser to three investment funds established by Goyal: Blue Horizon Partners Fund, LP; Blue Horizon Bio-Energy Fund, LP; and the Blue Horizon Global Equity Fund, LP (collectively, the "Blue Horizon Funds"). Since its inception, Goyal has exercised exclusive ownership, management and control over Blue Horizon.

9. Defendant Caldera Advisors, LLC ("Caldera") is an unregistered investment adviser established by Goyal as an Illinois limited liability company in October 2008. Caldera is based in Chicago and acts as the investment adviser to Caldera Equity Fund, LP (the "Caldera

Fund"). Since its inception, Goyal has exercised exclusive ownership, management and control over Caldera.

10. During the relevant time period, Goyal, Blue Horizon, and Caldera (collectively, "Defendants"), received compensation for engaging in the business of advising others as to the value of securities or as to the advisability of investing in, purchasing, or selling securities.

11. Relief Defendant Caldera Investment Group, Inc. ("Relief Defendant") was incorporated by Goyal in July 2009 as an Illinois corporation with an office in Chicago. The Relief Defendant purports to provide consulting services and advice to emerging companies seeking to raise capital or grow through M&A strategies, but in reality it never provided any of these services to clients. Goyal owns and manages Relief Defendant. During the period at issue in this Complaint, Goyal siphoned substantial money from his investors to Relief Defendant. Accordingly, Relief Defendant is the recipient of ill-gotten proceeds from the defrauded investors.

## GOYAL'S INVESTMENT FUNDS

12. In 2006, while attending law school, Goyal started the first of the Blue Horizon Funds – Blue Horizon Partners Fund, LP – by raising money from a few family members and friends. Between January 2006 and May 2012, Goyal raised at least $823,500 from eight investors for the Blue Horizon Partners Fund.

13. In 2007, Goyal returned home to Chicago, established the second of the Blue Horizon Funds – Blue Horizon Bio-Energy Fund, LP – and started raising investor money on behalf of that fund. Between January 2007 and May 2014, Goyal raised at least $3,110,000 from 23 investors for the Blue Horizon Bio-Energy Fund.

14. In 2008, Goyal established and started raising money for the third Blue Horizon Fund, Blue Horizon Global Equity Fund, LP. From May 2008 to May 2014, Goyal raised at least $4,239,080 from more than 25 investors for the Blue Horizon Global Equity Fund.

15. Blue Horizon served as the investment adviser to the Blue Horizon Funds. Because Goyal owned and controlled Blue Horizon, he likewise controlled the Blue Horizon Funds and determined how to spend the investment proceeds of the Blue Horizon Funds' investors.

16. In February 2009, Goyal established and starting raising money for the Caldera Fund, and by February 2014, Goyal had raised at least $3,267,568. Since the fund's inception, Caldera has served as the investment adviser to the Caldera Fund. Because Goyal owned and controlled Caldera, he likewise controlled the Caldera Fund and determined how to spend the investment proceeds of the fund's investors.

17. Both orally and in written offering materials, Goyal represented that the Blue Horizon Funds and Caldera Fund primarily invested in equities and employed a "long-short" trading strategy, meaning that the funds would purchase certain equity securities while selling short other equity securities. Additionally, Goyal would promote the Blue Horizon and Caldera Funds to prospective investors by touting the past performance of the funds and representing that the funds consistently and substantially outperformed the stock market.

18. The written offering materials that Goyal provided to the funds' prospective investors described the investments in each fund as "securities." The offering materials further described each fund's investment strategy and stated that the adviser would charge an annual management fee totaling 1% of assets under management along with 20% of all profits earned each year. Accordingly, the investors believed that Blue Horizon and Caldera were entitled to

receive no more than 1% of the investors' funds plus 20% of investment profits actually generated.

19.     In July 2009, Goyal established Relief Defendant Caldera Investment Group to purportedly provide consulting services and advice to emerging companies seeking to raise capital or grow through M&A strategies.  Goyal diverted substantial investor proceeds from the Blue Horizon Funds and Caldera Fund to the Relief Defendant.

20.     Beginning in 2010, Goyal, operating through Caldera Investment Group, used investor funds to rent and outfit an office, hire employees, purchase expensive equipment and trading technology, and otherwise provide the façade of a successful investment and consulting firm.

21.     As of May 2014, Goyal employed eight individuals and had recently moved into a brand new, lavishly furnished office suite.  Goyal's employees were purportedly responsible for researching and analyzing investment opportunities and making recommendations to Goyal for investments in the four investment funds controlled by Goyal.

22.     The hi-tech offices and team of employees were mere "window dressing" that Goyal needed to give the appearance of success and attract new investors.  In reality, very little trading occurred.

### GOYAL'S UNSUCCESSFUL TRADING AND HIS EFFORTS TO DISGUISE INVESTOR LOSSES

23.     Almost immediately after opening the Blue Horizon Partners Fund, Goyal incurred substantial trading losses.  Instead of disclosing these losses, Goyal sent investors periodic account statements that falsely showed the Fund obtaining above-market returns.

24.     In 2007, Goyal began to receive redemption requests from investors.  Thereafter, Goyal ran the funds as a Ponzi-type scheme, making payments to investors who had requested

6

redemptions based on inflated amounts represented in the periodic account statements. To meet these redemption requests, Goyal commingled investor funds between the three Blue Horizon Funds and Caldera Fund and used funds from later investors to meet the redemption requests from prior investors.

25. Between at least September 2008 and April 2014, Goyal used investor funds to satisfy redemptions in amounts up to the following: $351,869 of the $823,500 raised for the Blue Horizon Partners Fund; $864,878 of the $3,110,000 raised for the Blue Horizon Bio-Energy Fund; $1,171,991 of the $4,239,080 raised for the Blue Horizon Global Equity Fund; and $58,650 of the $3,267,568 raised for the Caldera Fund.

26. By January 2009, Goyal completely stopped trading on behalf of all of the Blue Horizon Funds. In fact, Goyal never opened a brokerage account for the Blue Horizon Global Equity Fund and did not have brokerage accounts for the Blue Horizon Partners Fund and Blue Horizon Bio-Energy Fund after February 2009.

27. Goyal told none of this to investors. Rather, he continued to raise millions of dollars for the Blue Horizon Funds, soliciting and accepting investments through May 2014.

28. As for the Caldera Fund, Goyal only engaged in limited trading, suffered substantial losses on that trading, and failed to disclose these facts to investors.

29. Goyal never told investors that he stopped trading securities on behalf of the Blue Horizon Funds, that he failed to open a brokerage account for the Blue Horizon Global Equity Fund, or that he was using investor funds almost solely to meet redemptions and fund his lifestyle.

30. Instead, throughout the period of the fraud, Goyal created and sent investors fictitious account statements for the Blue Horizon Funds and Caldera Fund that showed the funds

generating outsized returns. For instance, those fake account statements showed that the funds' annual returns for the years 2011 through 2013 ranged from 17% to 38.75%.

31. By sending investors account statements with inflated investment returns, Goyal misled investors into believing that he actually traded on behalf of the Blue Horizon Funds and that the Blue Horizon Funds and Caldera Fund were highly profitable. Several investors added to their positions in the Blue Horizon and Caldera Fund based on Goyal's inflated investment returns.

## GOYAL'S MISAPPROPRIATION OF INVESTOR PROCEEDS

32. Unbeknownst to his investors, Goyal misappropriated the majority of the proceeds raised from investors for his personal and business use.

33. Among other things, since at least May 2008, Goyal misappropriated investor proceeds: (a) to pay for two homes, including a $1.4 million home he purchased in 2012; (b) to make $150,000 in personal investments in various startup companies; (c) to make over $200,000 in personal investments in a Chicago tavern; (d) to lease luxury automobiles for himself and his wife; (e) to purchase expensive jewelry, watches, and artwork for himself and his wife; (f) for luxury vacations; (g) for designer clothing, including nearly a dozen custom-tailored suits; (h) for payroll and lease payments for Caldera Investment Group, and salary and bonuses for its employees; (i) to pay for the design and construction of an office suite for Caldera Investment Group, including top-of-the-line office furniture, computers and televisions; and (j) for extravagant "perks" for himself and his employees including a vacation for his staff and their companions to a luxury resort in the Caribbean, a lavish office holiday party, and holiday gifts consisting of one-ounce gold coins that he gave to each employee.

34. Additionally, Goyal diverted at least $100,000 of investor funds to a children's clothing boutique that his wife opened in 2011. Over the past three years, Goyal used stolen investor funds to support his wife's boutique, which was losing money, and to expand the business to a second location.

## COUNT I

### VIOLATIONS OF SECTION 17(a)(1) OF THE SECURITIES ACT
### [15 U.S.C. §77q(a)(1)]

35. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

36. By their conduct, Defendants, in the offer or sale of securities, by the use of any means or instruments of transportation or communication in interstate commerce and by the use of the mails, directly or indirectly, have employed devices, schemes or artifices to defraud.

37. Defendants acted with scienter.

38. By reason of the foregoing, Defendants violated Section 17(a)(1) of the Securities Act [15 U.S.C. § 77q(a)(1)].

## COUNT II

### VIOLATIONS OF SECTIONS 17(a)(2) AND 17(a)(3) OF THE SECURITIES ACT
### [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)]

39. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

40. By their conduct, Defendants, in the offer or sale of securities, by the use of any means or instruments of transportation and communication in interstate commerce and by the use of the mails, directly or indirectly, have obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the

statements made, in light of the circumstances under which they were made, not misleading; or have engaged in transactions, practices or courses of business that have been operating as a fraud or deceit upon purchasers of securities.

41. By reason of the foregoing, Defendants violated Sections 17(a)(2) and 17(a)(3) of the Securities Act [15 U.S.C. §§ 77q(a)(2) and 77q(a)(3)].

## COUNT III

### VIOLATIONS OF SECTION 10(b) OF THE EXCHANGE ACT [15 U.S.C. §78j(b)] AND RULE 10b-5 THEREUNDER [17 C.F.R. §240.10b-5]

42. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

43. By their conduct, Defendants, in connection with the purchase or sale of securities, by the use of any means or instrumentalities of interstate commerce or by the use of the mails, directly or indirectly: (a) employed a device, scheme or artifice to defraud; (b) made untrue statements of material fact and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in an act, practice, or course of business that has been or is operating as a fraud or deceit upon other persons, including purchasers and sellers of such securities.

44. Defendants acted with scienter.

45. By reason of the foregoing, Defendants violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## COUNT IV

### VIOLATIONS OF SECTIONS 206(1) and 206(2) OF THE ADVISERS ACT
### [15 U.S.C. §§ 80b-6(1) and 80b-6(2)]

46. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

47. By their conduct, Defendants, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, knowing or recklessly: (a) employed devices, schemes, or artifices to defraud their clients or prospective clients; and (b) engaged in transactions, practices, and courses of business that operated or would have operated as a fraud or deceit upon clients or prospective clients.

48. Defendants acted with scienter.

49. By reason of the foregoing, Defendants violated Sections 206(1) and (2) of the Advisers Act [15 U.S.C. § 80b-6(1) and 80b-6(2)].

## COUNT V

### VIOLATIONS OF SECTIONS 206(4) OF THE ADVISERS ACT [15 U.S.C. §§ 80b-6(4)] AND RULE 206(4)-8 THEREUNDER [17 C.F.R. § 275.206(4)-8]

50. Paragraphs 1 through 34 above are realleged and incorporated herein by reference.

51. By their conduct, Defendants, while acting as investment advisers, directly or indirectly, by use of the mails or means or instrumentalities of interstate commerce, engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative.

52. By their conduct, Defendants, while acting as investment advisers to a pooled investment vehicle: (a) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which

they were made, not misleading, to investors or prospective investors in the pooled investment vehicle; or (b) engaged in acts, practices, or courses of business that were fraudulent, deceptive, or manipulative with respect to investors or prospective investors in the pooled investment vehicle.

53. By reason of the foregoing, Defendants violated Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## COUNT IV

## EQUITABLE CLAIM AGAINST THE RELIEF DEFENDANT

54. The Commission incorporates by reference the allegations in paragraphs 1 through 34 as though fully set forth herein.

55. Relief Defendant Caldera Investment Group, Inc., directly or indirectly, received funds or benefited from the use of such funds, which are the proceeds of the unlawful activity alleged above.

56. Relief Defendant Caldera Investment Group, Inc. has no legitimate claim to such funds received, or from which it otherwise benefited from, directly or indirectly.

57. The Commission is entitled to an order, pursuant to common law equitable principles and pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. §78u(d)(5)] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14], requiring Relief Defendant to disgorge all of the proceeds of Defendants' illegal activities that it has received or from which it has benefited, either directly or indirectly.

## RELIEF REQUESTED

WHEREFORE, the SEC requests that this Court enter a judgment:

A. Finding that Defendants committed the violations alleged against them herein;

B.      Permanently enjoining Defendants from further violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5], and Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4)] and Rule 206(4)-8(a) thereunder [17 C.F.R. § 275.206(4)-8(a)];

C.      Ordering Defendants to disgorge all ill-gotten gains obtained through the unlawful conduct described above, plus prejudgment interest thereon;

D.      Ordering Relief Defendant to disgorge all funds it received, directly or indirectly, from Defendants' unlawful conduct, together with prejudgment interest thereon;

E.      Ordering Defendants to pay an appropriate civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. §77t(d)], Section 21(d) of the Exchange Act [15 U.S.C. §78u(d)], and Section 209(e) of the Advisers Act;

F.      Retain jurisdiction of this action in order to implement and carry out the terms of all orders and decrees that may be entered or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court

G.      Granting such other and additional relief as this Court deems just and proper.

## JURY DEMAND

The Commission requests a trial by jury.

Respectfully Submitted,

 /s/ Benjamin J. Hanauer
Benjamin J. Hanauer (Illinois Bar No. 6280156)
Richard G. Stoltz (Illinois Bar No. 6287486)
Attorneys for Plaintiff
U.S. Securities and Exchange Commission
175 West Jackson Boulevard, Suite 900
Chicago, Illinois 60604
Telephone:  (312) 353-7390
Facsimile: (312) 353-3381
Email: hanauerb@sec.gov
          stoltzr@sec.gov

Dated: May 28, 2014